**SEALED**

PHILLIP A. TALBERT
Acting United States Attorney
ROBERT J. ARTUZ
Special Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED
May 13, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH RAY HAWKINS,<br>JACQUELINE MARIE MARQUEZ,<br>ALYSSA MARIE JONES, and<br>EBONY CHANEL JONES,<br><br>Defendants. | CASE NO. 2:21-cr-93 WBS<br><br>18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud; 18 U.S.C. § 1341 – Mail Fraud (15 counts); 18 U.S.C. §§ 982(a)(2), 981(a)(1)(C), and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

I N D I C T M E N T

COUNT ONE: [18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud]

The Grand Jury charges:

KENNETH RAY HAWKINS,
JACQUELINE MARIE MARQUEZ,
ALYSSA MARIE JONES, and
EBONY CHANEL JONES,

defendants herein, as follows:

INTRODUCTION

At times material:

1.  Since 1935, the U.S. Department of Labor's Unemployment Insurance (UI) program has

INDICTMENT                                       1

provided unemployment benefits to eligible workers who become unemployed through no fault of their own. This program ensures that at least a significant portion of the necessities of life – most notably food, shelter, and clothing – are met on a weekly basis while the worker seeks employment. UI beneficiaries who meet the requirements of the applicable state law are eligible for this temporary financial assistance. Each state administers a separate UI program within the guidelines established by Federal law. In the State of California, the Employment Development Department (EDD) administers the UI program for residents and others physically performing work activities in California.

2. Generally, regular UI claimants must be: 1) unemployed through no fault of their own; 2) able and available for work; 3) willing to accept suitable work; and 4) actively seeking work.

3. On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

4. Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person must have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

5. The CARES Act established a new program – Pandemic Unemployment Assistance (PUA) – to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits including business owners, self-employed workers, independent contractors, and those with a limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program was sometimes referred to as PUA benefits.

6. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially

unemployed, unable to work, or unavailable to work due to a COVID-19-related reason. Examples of non-business-owner occupations that may qualify a person for PUA benefits included realtor, barber, hairstylist, freelance photographer, construction handyman/woman, gardener, and ride-share driver.

7. EDD began accepting applications for PUA benefits on April 28, 2020. To make benefits available as quickly as possible, payments were issued in phases. If a claimant qualified for PUA benefits, the minimum payments were as follows based on the claim's start date:

> Phase 1: For claims with start dates from February 2 to March 28, 2020, $167 per week for each week the claimant is unemployed due to COVID-19.
>
> Phase 2: For claims with start dates from March 29 to July 25, 2020, $167 plus $600 per week for each week the claimant is unemployed due to COVID-19.
>
> Phase 3: For claims with start dates from July 26 to December 26, 2020, $167 per week for each week the claimant is unemployed due to COVID-19.

8. PUA applicants were potentially eligible for more than the minimum weekly benefit amount of $167 if their annual income for 2019 reported on the PUA application met a minimum threshold.

9. A UI claimant could usually collect 26 weeks of regular state UI benefits. The CARES Act provides for additional Pandemic Emergency Unemployment Compensation ("PEUC"), which provided up to 13 weeks of additional payments, for a total of 39 weeks of benefits. PEUC was available to persons who were fully or partially unemployed at any time between from March 29 and December 26, 2020. Persons with a regular UI claim, a PUA claim, or a PEUC extension filed between March 29 and July 25, 2020, also received Federal Pandemic Unemployment Compensation ("FPUC"), which was the extra $600 per week.

10. Many persons that applied for PUA benefits did not need to submit any supporting documents to the EDD with their applications. Claimants entered their total income for the 2019 calendar year on the application. The stated income was then used to pay the minimum benefits of $167 per week. EDD sometimes requested documentation to provide proof of the stated income.

11. Like regular UI claims, PUA claims could be filed online. When an individual filed a PUA claim online, EDD automatically maintained certain information regarding the filing of the claim.

INDICTMENT  3

This information included the date and time the claim was submitted, the name of the person for whom the claim was filed, and the IP address of the computer, or ISP account, that was used to file the claim.

12. A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits. The claimant was required to provide his/her name, Social Security Number, and mailing address. The claimant was also required to identify a qualifying occupational status and COVID-19-related reason for being out of work.

13. After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Benefit Payment (EBP) debit card administered by Bank of America, N.A., which the claimant could use to pay for his/her expenses. The EBP card was sent via the U.S. Postal Service to the claimant at the address the claimant provided in their UI claim. Claimants could activate their debit card over the phone or online and could use the card to withdraw the UI funds from Automatic Teller Machines (ATMs).

14. When receiving UI benefits, including PUA benefits, a claimant was required to complete a Continued Claim Form (DE 4581) and certify every two weeks, under penalty of perjury, that he/she remained unemployed and eligible to receive UI benefits. EDD authorized and deposited payments to the EBP debit card after it received the Continued Claim Form. Weekly PUA benefits typically ranged from $40 to $450.

15. Defendant KENNETH RAY HAWKINS was incarcerated at Deuel Vocational Institution (DVI), a California state prison, in Tracy, California.

16. Defendant JAQUELINE MARIE MARQUEZ resided in Barstow, California and moved to Las Vegas, Nevada in or about mid-2020.

17. Defendant ALYSSA MARIE JONES resided in Moreno Valley, California and moved to Las Vegas, Nevada, in or about September 2020.

18. Defendant EBONY CHANEL JONES resided in Barstow, California.

### THE CONSPIRACY

19. Beginning at least as early as in or about June 2020, and continuing through in or about January 2021, in the State and Eastern District of California, and elsewhere, HAWKINS, MARQUEZ, A. JONES, and E. JONES knowingly and intentionally conspired among themselves and with each

other, and with others known and unknown to the Grand Jury, to execute a material scheme and artifice to defraud California EDD and the United States of money and property, and to obtain money and property from California EDD and the United States by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts, and to cause mail matter to be placed in a post office or an authorized depository for mail matter, and to be sent and delivered by the United States Postal Service (USPS), in execution of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341.

20. The purpose of the conspiracy was to obtain money and property from California EDD and the United States by submitting fraudulent UI and PUA claims to EDD.

### MANNER AND MEANS

During all times relevant to the conspiracy, the manner and means by which the conspiracy was sought to be accomplished include, among others, the following:

21. The conspirators communicated with each other through, among other methods, telephone calls, video chats, text messages, and emails.

22. HAWKINS obtained the personally identifying information (PII) of persons who were not newly unemployed or seeking employment for purposes of UI and PUA benefits at any time relevant to this Indictment. Such persons included, without limitation, other inmates at DVI and other prisons, and such PII included, without limitation, names, dates of birth, and Social Security numbers. For example, the inmate identities included, without limitation, Inmates 1 through 14. HAWKINS obtained the persons' PII with the intent to fraudulently use their identities to apply for UI and PUA benefits.

23. HAWKINS used the PII to submit fraudulent UI and PUA claims to California EDD under the corresponding persons' identities, including those of Inmates 1 through 14, using at least an electronic device that could access the Internet and California EDD's website. The conspirators were aware that none of Inmates 1 through 14 were eligible for UI and PUA benefits.

24. The underlying UI and PUA benefit applications contained false and fraudulent representations, including, without limitation, that the claimants had worked for particular employers and supervisors; had specific annual incomes; worked during particular time periods; were self-employed as managers, barbers, hair stylists, or other occupations; were laid off and had no work, were

newly unemployed due to a disaster including the COVID-19 pandemic; and were currently available to work. As the conspirators were aware, these claims were false, in that the inmates and other individuals were not so previously working, employed, newly unemployed, or seeking new employment. Particularly, Inmates 1 through 14 were not newly unemployed and seeking new employment because they were incarcerated. The conspirators knew that these representations regarding the claimants' employment and availability to work were false at the time they were made and submitted to California EDD.

25. The false and fraudulent representations contained in the underlying UI and PUA applications, including, without limitation, the claims for Inmates 1 through 14, were material to the claims being approved by California EDD. For example, EDD used the false information on the UI and PUA benefit applications to approve and calculate the fraudulent UI and PUA benefits ultimately paid out. California EDD would have denied a claim if an individual had answered truthfully that, for example, he/she had not worked within the prescribed period or was unavailable to work (including that he/she was unavailable due to incarceration).

26. The conspirators' scheme to defraud caused California EDD to deposit benefit funds into debit card accounts administered by Bank of America for the conspirators' false and fraudulent claims. Bank of America then mailed the debit cards via United States mail to addresses the conspirators provided to EDD and Bank of America in the false and fraudulent applications and by other means. Each of these addresses was a residence under the control of at least one conspirator.

27. The conspirators used the scheme's proceeds for their own benefit and for the benefit of others who were also not entitled to the UI and PUA funds.

28. In carrying out the conspiracy, the conspirators at all times material acted with the intent to defraud.

29. As a result of conspirator's acts and conduct in furtherance of the conspiracy, the conspirators submitted, and caused to be submitted, false and fraudulent claims for UI and PUA benefits to California EDD exceeding $1,200,000, and caused California EDD and the United States to incur losses exceeding $900,000.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH SIXTEEN: [18 U.S.C. § 1341 – Mail Fraud]

The Grand Jury further charges:

KENNETH RAY HAWKINS,
JACQUELINE MARIE MARQUEZ,
ALYSSA MARIE JONES, and
EBONY CHANEL JONES,

defendants herein, as follows:

THE SCHEME AND ARTIFICE TO DEFRAUD

1. Paragraphs 1 through 18 of Count One are reincorporated as if fully set forth herein.

2. Beginning at least as early as in or about June 2020, and continuing through in or about January 2021, in the State and Eastern District of California, and elsewhere, HAWKINS, MARQUEZ, A. JONES, and E. JONES knowingly and intentionally devised, intended to devise, and participated in, with the intent to defraud, a material scheme and artifice to defraud California EDD and the United States of money and property, and to obtain money and property from California EDD and the United States by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

3. The purpose of the scheme and artifice to defraud was to obtain money and property from California EDD and the United States by submitting fraudulent UI and PUA claims to EDD.

MANNER AND MEANS

4. In furtherance of the scheme and artifice to defraud and to obtain money and property, HAWKINS, MARQUEZ, A. JONES, and E. JONES, and others known and unknown to the Grand Jury, employed, among others, the following manner and means:

5. Paragraphs 21 through 29 of Count One are reincorporated as if fully set forth herein.

MAILINGS

6. On or about the dates set forth below, in the State and Eastern District of California, and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, HAWKINS, MARQUEZ, A. JONES, and E. JONES knowingly and intentionally caused, according to their direction, the following mail matter to be placed in a post office and an authorized depository for mail matter and to be sent and delivered by the U.S. Postal Service:

INDICTMENT

7

| COUNT | DATE | MAIL MATTER |
|---|---|---|
| 2 | June 17, 2020 | EDD debit card ending in -6776, administered by Bank of America, mailed to Barstow, CA |
| 3 | June 25, 2020 | EDD debit card ending in -2554, administered by Bank of America, mailed to San Bernardino, CA |
| 4 | July 3, 2020 | EDD debit card ending in -9647, administered by Bank of America, mailed to Los Angeles, CA |
| 5 | July 15, 2020 | EDD debit card ending in -6640, administered by Bank of America, mailed to San Bernardino, CA |
| 6 | July 22, 2020 | EDD debit card ending in -9622, administered by Bank of America, mailed to San Bernardino, CA |
| 7 | July 22, 2020 | EDD debit card ending in -6381, administered by Bank of America, mailed to San Bernardino, CA |
| 8 | July 25, 2020 | EDD debit card ending in -8384, administered by Bank of America, mailed to San Bernardino, CA |
| 9 | July 29, 2020 | EDD debit card ending in -4289, administered by Bank of America, mailed to San Bernardino, CA |
| 10 | July 29, 2020 | EDD debit card ending in -9721, administered by Bank of America, mailed to Rialto, CA |
| 11 | July 30, 2020 | EDD debit card ending in -6150, administered by Bank of America, mailed to San Bernardino, CA |
| 12 | August 4, 2020 | EDD debit card ending in -7772, administered by Bank of America, mailed to Barstow, CA |
| 13 | August 5, 2020 | EDD debit card ending in -8089, administered by Bank of America, mailed to Moreno Valley, CA |
| 14 | August 16, 2020 | EDD debit card ending in -1604, administered by Bank of America, mailed to Moreno Valley, CA |
| 15 | August 20, 2020 | EDD debit card ending in -6135, administered by Bank of America, mailed to San Bernardino, CA |
| 16 | September 8, 2020 | EDD debit card ending in -7059, administered by Bank of America, mailed to Barstow, CA |

All in violation of Title 18, United States Code, Section 1341.

FORFEITURE ALLEGATION: [18 U.S.C. §§ 982(a)(2), 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.    Upon conviction of one or more of the offenses alleged in Count One through Sixteen of the Indictment, defendants KENNETH RAY HAWKINS, JACQUELINE MARIE MARQUEZ, ALYSSA MARIE JONES, and EBONY CHANEL JONES shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), § 982(a)(2)(B) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to a sum of

money equal to the total amount of money involved in the offenses, for which the defendants are convicted.

    2.    If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Sixteen of this Indictment, for which the defendants are convicted:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA

_____
FOREPERSON

_____
PHILLIP A. TALBERT
Acting United States Attorney

**SEALED**

No. 2:21-cr-93 WBS

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA

vs.

KENNETH RAY HAWKINS,
JACQUELINE MARIE MARQUEZ,
ALYSSA MARIE JONES, and
EBONY CHANEL JONES

INDICTMENT

**VIOLATION(S):**
18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud;
18 U.S.C. § 1341 – Mail Fraud (15 counts);
18 U.S.C. §§ 982(a)(2), 981(a)(1)(C), and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*

/s/ Signature on file w/AUSA

*Foreman.*

Filed in open court this 13th day of May, A.D. 20 21

PBuzo

*Clerk.*

Bail, $ No Bail Warrant Pending Hearing

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

SEALED

## United States v. Hawkins et al.
## Penalties for Indictment

**Defendants**
Kenneth Ray Hawkins
Jacqueline Marie Marquez
Alyssa Marie Jones
Ebony Chanel Jones

**COUNT 1:**         ALL DEFENDANTS

VIOLATION:     18 U.S.C. § 1349 – Conspiracy to Mail Fraud

PENALTIES:     Up to 20 years imprisonment
Fine of up to $250,000; or both fine and imprisonment
Supervised release up to 3 years

**COUNTS 2 TO 16:**  ALL DEFENDANTS

VIOLATION:     18 U.S.C. § 1341 – Mail Fraud

PENALTIES:     Up to 20 years imprisonment
Fine of up to $250,000; or both fine and imprisonment
Supervised release up to 3 years

**FORFEITURE ALLEGATION:**   ALL DEFENDANTS

VIOLATION:     18 U.S.C. §§ 982(a)(2), 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES:     As stated in the charging document